IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 3:18-CR-132-WKW |
| | ) | [WO] |
| PABLO ANTONIO PANTALEON-AVILES | ) | |
| | ) | |

# **MEMORANDUM OPINION**

After calculating a defendant's advisory Guidelines sentencing range, a court "may impose a more severe or more lenient sentence as long as the sentence is reasonable." *United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005). The factors set forth in 18 U.S.C. § 3553(a) guide the court's determination of whether a variance from the Guidelines range is justified. *See United States v. Livesay*, 525 F.3d 1081, 1091 (11th Cir. 2008).

On February 13, 2019, the court imposed a sentence of time served on Defendant's conviction on one count of illegal reentry of a removed alien, in violation of 18 U.S.C. § 1326(a). That sentence was an upward variance, and this memorandum opinion supplements the findings the court made on the record in support of the upward variance. The record has more detail.

This case came to the court on a written plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and the fast-track program.

In open court on July 12, 2018, the court rejected the plea agreement, which called for a sentence at the very bottom of the guideline range. The court rejected the agreement primarily based on Defendant's criminal history. At that time, the presentence report ("PSR") disclosed that Defendant, a citizen of Mexico, had (1) a 2001 federal misdemeanor conviction for improper entry into the United States by an alien; (2) a 2002 entry without inspection that resulted in a deportation and five-year ban on Defendant's entry into the United States; and (3) two alcohol-related offenses. The PSR also disclosed, but without dates and details, that the United States Border Patrol had apprehended Defendant ten times and that, on each occasion, he was granted a voluntary departure to Mexico.

The parties then entered a new written plea agreement pursuant to Rule 11(c)(1)(C), which largely paralleled the rejected plea agreement, except for the parties' agreement that Defendant receive a Guidelines sentence. In open court, on October 31, 2018, the court rejected that agreement as well. It also received from the probation officer additional information concerning Defendant's illegal reentries. (Doc. # 47, at 5–9.) Thereafter, on November 7, 2018, Defendant moved to withdraw his plea of guilty. (Doc. # 44.) That motion was granted. (Doc. # 45.) Defendant proceeded to trial and was convicted. (Doc. # 68.) At trial, the court learned that there were even more illegal reentries by this Defendant than was previously known.

After trial, the probation officer revised the PSR to update the procedural history and to include additional findings from her investigation concerning Defendant's illegal reentries. The probation officer's investigation reveals no less than seventeen apprehensions where, in lieu of deportation, Defendant was granted voluntary departures. (PSR ¶¶ 36–52.) To summarize, according to the PSR (to which no party objected), Defendant was apprehended and voluntarily returned to Mexico once in 1995; twice in 1996; twice in 1998; five times (during a seven-month period) in 1999; six times in 2000; and once in 2001. On most of those occasions, he returned to the United States almost immediately. For instance, in May 1996 and December 2000, he was voluntarily returned to Mexico, only to illegally return to the United States the very next day. (PSR ¶¶ 37, 38, 50, 51.) In June 1999, he was voluntarily returned to Mexico, and a mere five days later, he was apprehended again in the United States. In October 2000, just eleven days passed between his voluntary departure to Mexico and subsequent illegal reentry. (PSR ¶¶ 48, 49.) The time span between Defendant's voluntary departures and subsequent apprehensions after illegal reentries, where not days, were only a matter of weeks. (PSR ¶¶ 39, 40 (six weeks); PSR ¶¶ 41, 42 (twelve weeks); PSR ¶¶ 43, 44 (ten weeks); PSR ¶¶ 44, 45 (three weeks); PSR ¶¶ 46, 47 (eight weeks). And his arrest on his eighteenth documented illegal reentry (which ultimately got him deported) happened only

seven weeks after he had been voluntarily returned to Mexico for the seventeenth time. (PSR ¶¶ 31, 52.)

Furthermore, Defendant's eighteenth illegal reentry into this country resulted in his harshest punishment: a misdemeanor conviction in 2001 and 150-day sentence. (PSR ¶ 31.) He thereafter was deported in 2002 and issued a five-year ban on reentry into the United States. (PSR ¶ 53.) But neither Defendant's five-month custodial sentence nor his five-year ban on reentry into the United States nor his seventeen illegal entries, which resulted in swift voluntary departures, had any deterrent effect. It is not clear exactly when, but his criminal history reveals that he was back in the United States at least by 2007. When he was arrested and convicted in Alabama for driving under the influence. That conviction — for which there is no record that he was deported — reveals that Defendant has been back illegally in the United States for more than a decade. (PSR ¶ 32; *see also* PSR ¶ 65, in which Defendant reports that he has been living in Montgomery, Alabama, since 2008).)[1]

Moreover, contrary to a defense argument made earlier in these proceedings, Defendant did more than merely step over the border prior to being granted voluntary departures back to Mexico.[2] In September 2001, he was apprehended in Bowie,

---

[1] The court considered the age of the eighteen illegal entries into the country. The fact that Defendant purposefully avoided detection and removal for over ten years — all the while here illegally — merely ages the facts, but does not excuse or ameliorate the continuing violations.

[2] According to the collective notes of the court and the court reporter, at the July 12, 2018 proceeding, defense counsel argued that in Defendant's voluntary departures he was "turned

Arizona, ninety-five miles north of the Mexico-U.S. border (PSR ¶ 52), and, in October 2000, he was apprehended in Oceanside, California, eighty miles north of the border (PSR ¶ 49). And his October 2001 federal misdemeanor conviction for improper entry by an alien stems from his arrest in Van Horn, Texas, sixty miles north of the border. (PSR ¶ 31.)

Defendant's path of illegal entries spans over 800 miles of the southern border and three states, from Oceanside, California, to Van Horn, Texas. Defendant's present conviction extends that path more than a thousand miles from West Texas to Lee County, Alabama. The investigation of Defendant's criminal history eventually uncovered a multitude of illegal entries by Defendant into this country. To date, including the instant offense of conviction, the number of times Defendant has been apprehended for illegally entering the United States now stands at nineteen over the course of more than twenty years.

At sentencing, the court had the foregoing information available for its determination of an appropriate sentence. After considering the Guidelines, which resulted in a sentencing range of zero to six months, and the totality of Defendant's conduct in relation to the § 3553(a) factors, the court imposed a sentence of time

---

around at the border" and, thus, "didn't actually make it into the United States. Those were simply where he was apprehended at the border and turned around."

5

served, which was an upward variance.[3] Multiple § 3553(a) factors warranted the variance above the Guidelines range, in particular, (1) the nature and circumstances of the present offense, (2) the history and characteristics of Defendant, (3) Defendant's vast disrespect for the laws of this country and the concomitant need to promote respect for the law, (4) the need to provide just punishment for the offense, (5) the need to provide adequate deterrence, (6) the need to protect the public, and (7) the need to avoid unwarranted sentence disparities. *See* § 3553(a). A sentence of time served is a reasonable sentence.

A judgment in conformity with this memorandum opinion will be forthcoming.

DONE this 20th day of February, 2019.

/s/ W. Keith Watkins<br>
UNITED STATES DISTRICT JUDGE

---

[3] Defendant has been detained in federal custody since April 19, 2018, and, thus, at the time of sentencing, had been in custody longer than the maximum of the Guidelines range